# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MELBA C. ROBINSON, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:16-CV-1148 (JCH) |
| v. | : | |
| | : | |
| DEPARTMENT OF MOTOR VEHICLE, | : | MAY 23, 2017 |
| Defendant, | : | |
| | : | |

## RULING RE: MOTION TO DISMISS (DOC. NO. 28)

## I.    INTRODUCTION

The plaintiff, Melba C. Robinson ("Robinson"), pro se, brings this employment

discrimination action against the defendant, the State of Connecticut Department of

Motor Vehicles ("DMV").  Robinson "asserts claims pursuant to Title VII of the Civil

Rights Act, 42 U.S.C. §§ 2000e et seq. ('Title VII')," consisting of "claims for

discrimination on the basis of race and color," including "both direct discrimination

claims and claims of retaliation."[1]  Rec. Ruling (Doc. No. 12) (Merriam, J.) at 1, 6–7,

recommendation adopted Endorsement Order (Doc. No. 13).  At the initial review stage,

this court allowed Robinson's Title VII claims to "proceed."  Rec. Ruling at 7.  DMV now

moves to dismiss these Title VII claims for failure to state a claim upon which relief can

be granted.  See Mot. to Dismiss (Doc. No. 28).  "Specifically," DMV argues that (1)

Robinson "has failed to state a claim for which relief can be granted regarding her

termination, because such claims are time-barred," (2) Robinson "has failed to state a

---

[1] Robinson also initially "assert[ed] claims pursuant to . . . the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. ('ADA')."  Rec. Ruling (Doc. No. 12) (Merriam, J.) at 1, recommendation adopted Endorsement Order (Doc. No. 13).  However, this court has dismissed all ADA claims.  See Rec. Ruling at 8.

claim for which relief can be granted, because the plaintiff had entered into a Stipulated

Agreement, barring her claims," and (3) Robinson "cannot establish a prima facie case

on her remaining claims because no adverse action is pled, the claims do not rise to the

level of hostile work environment, and her allegations of discrimination are bereft of any

specific factual allegations."[2]  Id.  Additionally, DMV "moves to strike" Robinson's "jury

claim," arguing that "there is no right to a trial by jury on claims of equitable relief under

[the Connecticut Fair Employment Practices Act (CFEPA)][3] or Title VII."  Id.  For the

reasons set forth below, the Motion to Dismiss is **granted in part and denied in part**.

## II.    FACTS

The initial review stage Recommended Ruling, which this court has adopted, sets

out the facts alleged as follows:

> Plaintiff alleges that she was unlawfully terminated by her
> employer, defendant, on March 1, 2013.  See [Compl. (Doc.
> No. 1)] at 2.  According to plaintiff's Complaint, she was
> terminated because of discrimination due to her race[ and]
> color[ ], and in retaliation for filing a complaint of
> discrimination.  Id. at 5, 7.  The Complaint includes allegations
> of several incidents in support of her claims.
>
> Specifically, plaintiff alleges that in June 2011 she was
> suspended and given a "last chance agreement" as a result
> of an incident involving a customer, in which "branch
> management refused to assist" her.  Id. at 3.  She contends

---

[2] DMV states that it moves to dismiss under both Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  See Mot. to Dismiss.  Rule 12(b)(1) allows a motion to dismiss for "lack of subject-matter jurisdiction" and Rule 12(b)(6) allows a motion to dismiss for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(1),(6).  However, all DMV's arguments for dismissal appear to rest upon DMV's contention that Robinson has failed to state a claim upon which relief can be granted.  See Mot. to Dismiss (describing first two arguments as that Robinson "failed to state a claim" for a particular reason, and describing third argument as that Robinson "cannot establish a prima facie case").  Although the Defendant's Memorandum (Doc. No. 28-1) sets out the standards for dismissal under both Rules 12(b)(1) and 12(b)(6), see Def.'s Mem. at 3–6, the Memorandum provides no argument as to why this court lacks subject matter jurisdiction, see id. at 6–16.  The court therefore construes the Motion to Dismiss as a motion solely under Rule 12(b)(6).

[3] The court notes that the Complaint does not mention CFEPA.  See Compl. at 1–13.  Thus, the court does not construe the Complaint as raising claims under CFEPA.

that she had repeated meetings with supervisors and even the Commissioner regarding what she viewed as unfair treatment in connection with this discipline, and that from that point forward things "continued to get worse for" her. Id. On July 26, 2011, she was involved in a "minor disagreement with a Caucasian co-worker" after a near car accident. Id. at 3. Plaintiff states that while she was suspended for two days due to the incident, the other worker faced no punishment because [ ]she was [ ] Caucasian. Id. at 4. Plaintiff further claims that she was transferred from defendant's Norwalk office to its Bridgeport office the day after this incident. Id.

Plaintiff states that while working in Bridgeport she was treated by management "in a discriminatory manner" and "in a disrespectful manner." Id. Plaintiff describes several instances in which she alleges she was treated unfairly, including being "embarrassed in front of [her] customers" by her manager, being "accused of lying[,]" and being made to "feel like [she] was under a microscope." Id. at 4–5.

The plaintiff's employment was terminated on February 15, 2013, due to "Unsatisfactory Service Ratings" and for failure to meet the terms of the last chance agreement. Id. at 5. Plaintiff alleges that her employment was terminated after she filed a discrimination complaint against the defendant. Id. Plaintiff asserts that the defendant claimed she was terminated because of her attendance, but she states that she was never disciplined for her attendance and that several of her absences should have been covered by FMLA. Id. Plaintiff claims that she had a "note from the doctor" but that defendant "refused to take it." Id. Plaintiff alleges that she was terminated by defendant because she had become "a target for them." Id. at 6.

On July 21, 2016, plaintiff filed a "right to sue" letter issued by the Equal Employment Opportunity Commission. See ["Right to Sue" Letter (Doc. No. 10)].

Rec. Ruling at 2–4.

## III. LEGAL STANDARD

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must determine whether the plaintiff has stated a legally cognizable claim by making allegations that, if true, would show that the plaintiff is entitled to relief. See Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 557 (2007) (interpreting Rule 12(b)(6), in accordance with Rule 8(a)(2), to require allegations with "enough heft to 'sho[w] that the pleader is entitled to relief'"). The court takes all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. See Crawford v. Cuomo, 796 F.3d 252, 256 (2d Cir. 2015). However, the tenet that a court must accept a complaint's allegations as true is inapplicable to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

To survive a motion pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (2009) (quoting Twombly, 550 U.S. at 556).

## IV. DISCUSSION

### A. Time Barring of Termination Claim

DMV argues that Robinson "has failed to state a claim for which relief can be granted regarding her termination, because such claims are time-barred." Mot. to Dismiss. DMV argues that Robinson's "claim that her termination was due to discrimination or retaliation is time barred," because Robinson "was notified of her termination on February 15, 2013, and the termination was effective as of March 1, 2013," but Robinson "did not file her Amended Complaint with the [Connecticut

4

Commission on Human Rights and Opportunities (CHRO)] alleging that her termination was due to retaliatory treatment [ ] until February 25, 2014." Def.'s Mem. (Doc. No. 28-1) at 6. As discussed below, DMV may ultimately prove correct that Robinson's termination claim is time-barred. However, because Robinson's Complaint contains facts sufficient to plausibly allege that equitable tolling may apply, the court concludes that it would be premature to decide the time-barring question at this motion to dismiss stage.

Rather than relying solely on the allegations in the Complaint, DMV's time-barring argument relies in part on an Amended CHRO Complaint (Doc. No. 28-3), which DMV submitted to the court. Robinson's Complaint does allege that Robinson was notified of her termination on February 15, 2013 and that her termination was effective on March 1, 2013. See Compl. at 2, 5. Her Complaint also alleges that she "filed charges with the" CHRO. Id. at 8. However, Robinson's Complaint does not contain an allegation as to (1) the date when Robinson initially filed a complaint with the CHRO or (2) the date when Robinson amended her CHRO complaint. See id. at 8–9. Robinson's only allegations pertinent to the date when she informed the CHRO of her termination claim are that Robinson "inform[ed]" "CHRO's Regional Manager Tanya Hughes" ("Hughes") "on May 2, 2013" that Robinson "was terminated by" DMV, but that Hughes failed or refused to file Robinson's Amended CHRO Complaint at that time. Id. at 9. From the Complaint itself, there is thus no basis upon which the court can conclude that Robinson "did not file her [Amended CHRO Complaint] alleging that her termination was due to retaliatory treatment [ ] until February 25, 2014." Def.'s Mem. at 6.

However, the Amended CHRO Complaint submitted to the court by DMV is dated February 25, 2014, and signed by Robinson.  See Am. CHRO Compl. at 2.  The Amended CHRO Complaint states that Robinson "amends" her previous complaint to the CHRO and "adds" that DMV "terminated [her] employment on or about February 15, 2013."  Id. ¶¶ 2, 5.  The Amended CHRO Complaint thus supports DMV's argument that Robinson "did not file her [Amended CHRO Complaint] alleging that her termination was due to retaliatory treatment [ ] until February 25, 2014."  Def.'s Mem. at 6.

"[I]n ruling on a Rule 12(b) motion to dismiss," the Second Circuit has "acknowledged that [a] court may [ ] consider matters of which judicial notice may be taken."  Apotex Inc. v. Acorda Therapeutics, Inc., 823 F.3d 51, 60 (2d Cir. 2016) (internal quotation marks omitted).  Specifically, the Second Circuit has held that, at the motion to dismiss stage, a court may take judicial notice of "regulatory filings."  Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 424–25 (2d Cir. 2008).  For instance, a court in the Eastern District of New York has granted the defendants' request that the court "take judicial notice of—and thus consider for purposes of [a] motion [to dismiss]— [ ]a complaint filed by plaintiff [ ] with a[ state] administrative agency," and submitted to the court by the defendants.  Volpe v. Nassau Cty., 915 F. Supp. 2d 284, 291 (E.D.N.Y. 2013).  It is thus proper for the court to take judicial notice of the date of the Amended CHRO Complaint, February 25, 2014.

Due to Title VII's requirements, the fact that the Amended CHRO Complaint was filed on February 25, 2014, means that Robinson could not have lawfully filed a termination-related claim with the United States Equal Employment Opportunity Commission (EEOC) before February 25, 2014:  Title VII provides that,

> [i]n the case of an alleged unlawful employment practice
> occurring in a State . . . which has a State [ ] law prohibiting
> the unlawful employment practice alleged and establishing or
> authorizing a State [ ] authority to grant or seek relief from
> such practice . . . , no charge may be filed [with the EEOC] by
> the person aggrieved before the expiration of sixty days after
> proceedings have been commenced under the State [ ] law,
> unless such proceedings have been earlier terminated.

42 U.S.C. § 2000e-5(c). The CHRO is such a "State [ ] authority" "authorize[ed] to grant

or seek relief from" the "practice" of racially discriminatory, and retaliatory, termination.

Id.; see also Conn. Gen. Stat. §§ 46a-52, 46a-54 (establishing and empowering CHRO);

Conn. Gen. Stat. § 46a-60(a)(1),(4) (prohibiting racially discriminatory, or retaliatory,

termination). Robinson thus could not have filed a valid EEOC charge of unlawful

termination before she filed a CHRO charge of unlawful termination. See 42 U.S.C. §

2000e-5(c). Because the court has taken judicial notice of the fact that Robinson filed

the CHRO charge of unlawful termination on February 25, 2014, see Am. CHRO Compl.

at 2, the court concludes that Robinson could not have lawfully filed an EEOC charge of

unlawful termination before February 25, 2014.

Title VII also states the following:

> A charge [with the EEOC] shall be filed . . . in a case of an
> unlawful employment practice with respect to which the
> person aggrieved has initially instituted proceedings with a
> State [ ] agency . . . , [ ] within three hundred days after the
> alleged unlawful employment practice occurred, or within
> thirty days after receiving notice that the State or local agency
> has terminated the proceedings under the State or local law,
> whichever is earlier.

42 U.S.C. § 2000e-5(e)(1). The Supreme Court has explained section 2000e-5(e)(1) as

follows:

> The time limit provisions of Title VII . . . establish the following
> procedures for filing discrimination charges with the EEOC.
> . . . If a complainant initially institutes proceedings with a state

[ ] agency with authority to grant or seek relief from the practice charged, the time limit for filing with the EEOC is [ ] 300 days.

E.E.O.C. v. Commercial Office Prod. Co., 486 U.S. 107, 110 (1988) (citations omitted). Robinson was thus required to file her EEOC claim regarding unlawful termination at least as early as 300 days after the unlawful termination occurred. However, as discussed above, based on the timing of Robinson's Amended CHRO Complaint, Robinson cannot have filed a valid EEOC termination claim before February 25, 2014. See Am. CHRO Compl. at 1; 42 U.S.C. § 2000e-5(c). February 25, 2014 is 375 days after Robinson was notified of her termination, and 361 days after her termination became effective. See Compl. at 2, 5 (alleging that Robinson was notified of her termination on February 15, 2013 and that her termination was effective on March 1, 2013). Based on this timing, the court concludes that Robinson did not file her termination-related claims with the EEOC in a timely manner.

Ordinarily, a court dismisses a Section VII claim which the plaintiff failed to file with the EEOC in a timely manner. See Pilman v. N.Y. City Hous. Auth., 64 F. App'x 293, 296 (2d Cir. 2003) ("[T]he District Court properly dismissed [plaintiff's] discrimination claim as time-barred. Under [ ] Title VII . . . , a claimant may bring suit in federal court only if she has filed a timely complaint with the EEOC."); Smith v. NYC Health & Hosp. Corp., No. 10-CV-714 RRM LB, 2013 WL 3013641, at *3 (E.D.N.Y. June 18, 2013) ("A Plaintiff must timely file an EEOC charge as a prerequisite to a Title VII claim in federal court.").

Under the circumstances present here, however, equitable tolling may apply to allow Robinson to proceed with her termination claim. The Supreme Court has held "that filing a timely charge of discrimination with the EEOC is not a jurisdictional

prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982). In the employment discrimination context, the Second Circuit has explained that,

> equitable tolling is only appropriate in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights.
>
> Equitable tolling is generally considered appropriate where the plaintiff actively pursued judicial remedies but filed a defective pleading during the specified time period, where plaintiff was unaware of his or her cause of action due to misleading conduct of the defendant, or where a plaintiff's medical condition or mental impairment prevented her from proceeding in a timely fashion. When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply.

Zerilli-Edelglass v. N.Y. City Transit Auth., 333 F.3d 74, 80–81 (2d Cir. 2003) (internal quotation marks, brackets, and citations omitted).

Here, the Complaint alleges that "CHRO's Regional Manager Tanya Hughes" initially failed or refused to file the Amended CHRO Complaint "on May 2, 2013," when Robinson "inform[ed] her" that Robinson "was terminated." Compl. at 9. The court notes that May 2, 2013 is only 76 days after Robinson received notification of her termination and only 62 days after her termination became effective. See id. at 2, 5. The court construes the Complaint in the light most favorable to Robinson—and grants Robinson special solicitude due to her pro se status. See Tracy v. Freshwater, 623 F.3d 90, 101 (2d Cir. 2010). Thus, the court reads the Complaint to allege that Robinson "acted with reasonable diligence during the time period" between when she

9

was notified of her termination and when she succeeded in amending her CHRO complaint to add a termination claim. Zerilli-Edelglass, 333 F.3d at 80. It is too soon at this stage for the court to determine whether "the circumstances are so extraordinary that the doctrine [of equitable tolling] should apply," Zerilli-Edelglass, 333 F.3d at 81, because the court has not yet received evidence as to the circumstances of the CHRO's failure or refusal to allow Robinson to amend her CHRO complaint, see Compl. at 9. At this stage, the court, however, does not treat the untimeliness of Robinson's filing of her termination claim with the EEOC as a reason to dismiss those claims.

DMV cites Jiles v. Rochester Genesee Reg'l Transportation Auth., No. 6:16-CV-06051 (EAW), 2016 WL 6600145, at (W.D.N.Y. Nov. 8, 2016) in support of its argument that equitable tolling should not apply. See Reply (Doc. No. 33) at 5. In Jiles, a court in the Western District of New York held that equitable tolling did not apply where the plaintiff failed to comply with Title VII's statute of limitations due to the plaintiff's misunderstanding of an accurate statement made to the plaintiff by a representative of the state employment discrimination agency. See id. at *3. Here, however, Robinson does not allege merely that a CHRO employee told her accurate information which Robinson misunderstood, or even that a CHRO employee lied to her. Rather, the court construes Robinson's Complaint as alleging that Robinson attempted to amend her CHRO complaint in a timely manner, but that the CHRO refused to enable her to do so. See Compl. at 9. These facts, if proven, may warrant equitable tolling.

The court acknowledges that the Second Circuit has previously "noted that it is 'questionable' whether [an employment discrimination agency's] actions can be a basis for equitable tolling where the [agency] is not a defendant." Li-Lan Tsai v. Rockefeller

*Univ.*, 46 F. App'x 657, 658 (2d Cir. 2002) (quoting *Vernon v. Cassadaga Valley Cent. Sch. Dist.*, 49 F.3d 886, 891 (2d Cir. 1995)). However, the Second Circuit has not stated categorically that an employment discrimination agency's actions cannot be the basis for equitable tolling. *See, e.g.*, *Hannah v. Wal-Mart Stores, Inc.*, 969 F. Supp. 2d 229, 233–34 (D. Conn. 2013) (discussing uncertainty within this Circuit). Indeed, a court in the Southern District of New York has ruled that "the actions of a nonparty civil rights agency can cause equitable tolling." *Simmons v. Terrace Healthcare Ctr., Inc.*, No. 01 CV 3531 (RCC), 2004 WL 555708, at *7 (S.D.N.Y. Mar. 19, 2004). The *Simmons* court thus held that a state employment discrimination agency's provision of misleading information warranted equitable tolling of federal employment discrimination claims—although the agency was not a party to the suit. *See id.* at *7. Similarly, "[s]ome courts in this Circuit have held that a court may waive the administrative requirement . . . when the EEOC has incorrectly refused to" take a certain action, which action would normally be a prerequisite to the plaintiff filing suit—even where the EEOC was not a party to the action. *Johnson v. DCM Erectors, Inc.*, No. 15-CV-5415 (PKC), 2016 WL 407293, at *2 (S.D.N.Y. Feb. 2, 2016) (internal quotation marks omitted) (discussing EEOC's incorrect refusal to file a right-to-sue letter). Courts in this Circuit have similarly applied equitable tolling where the EEOC (1) gave a plaintiff misinformation resulting in the plaintiff's failure to file timely charges, or (2) withdrew the plaintiff's complaint due to an administrative error—again, even where the EEOC was not a party to the action. *See* *Jiles*, 2016 WL 6600145, at *3 (collecting cases). Thus, under certain circumstances, a state administrative agency's wrongful refusal to allow a plaintiff to amend her complaint might be "so extraordinary that the doctrine [of equitable

11

tolling] should apply." <u>Zerilli-Edelglass</u>, 333 F.3d at 81.

The parties are therefore entitled to present evidence as to (1) Robinson's attempt to timely amend her CHRO complaint, and (2) CHRO's response to this attempt. While this evidence may ultimately prove insufficient to warrant equitable tolling, Robinson plausibly alleges facts from which the court can infer that equitable tolling may apply, so as to allow her termination claim to proceed at this stage.

B.        <u>Stipulated Agreement</u>

DMV also argues that Robinson "has failed to state a claim for which relief can be granted, because the plaintiff had entered into a Stipulated Agreement, barring her claims." Mot. to Dismiss. DMV's argument relies on two pieces of evidence DMV submitted to the court: the First Stipulated Agreement (Doc. No. 28-5), dated August 3 and August 4, 2011, and the Second Stipulated Agreement (Doc. No. 28-6), dated December 6, 2011 (collectively, the "Stipulated Agreements"). <u>See</u> Def.'s Mem. at 8.

Robinson's Complaint does not contain the contents of the Stipulated Agreements, nor does her Complaint allege facts from which the court could conclude that, in one or both Stipulated Agreements, Robinson waived her right to sue for employment discrimination. Rather, the Complaint merely alleges the following, as pertaining to the Stipulated Agreements: After the June 2011 incident involving the customer, Robinson "was suspended for 20 days without pay and giv[en] [the First Stipulated Agreement]." Compl. at 3. Robinson "requested a grievance hearing regarding [the First Stipulated Agreement] and [the] suspension." <u>Id.</u> at 3. Despite Robinson's repeated protestations, Robinson "was told by HR and the Union" that Robinson "was going to be terminated if" Robinson "didn't sign the [First Stipulated

Agreement]." Id. at 3. "Things continued to get worse for" Robinson "as a result of the [First] Stipulated Agreement." Id. at 3. Robinson "was told" that the First Stipulated Agreement would "remain in [Robinson's] file for the duration of [her] employment with DMV meaning any manager had access to" the First Stipulated Agreement. Id. at 3. When Robinson was ultimately fired, "the pre-disciplinary summary[ ] stated [that Robinson] was terminated for [one of the Stipulated Agreements]." Id. at 5. Robinson speculates that one of the Stipulated Agreements "was issued to create a negative perspective of" Robinson, and that, "[o]nce management placed this agreement in" Robinson's "file," Robinson "became a target for" DMV. Id. at 6. These allegations of the Complaint, without more, are insufficient to support DMV's argument that Robinson entered into a contract "barring her claims." Mot. to Dismiss.

A court generally decides a Rule 12(b)(6) motion to dismiss based on the allegations in the complaint, and not based on evidence.[4] See F.D.I.C. v. U.S. Mortg. Corp., 132 F. Supp. 3d 369, 379 (E.D.N.Y. 2015).

> For purposes of this rule, the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference. Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies

---

[4] As discussed in footnote 2, supra, the court construes DMV's Stipulated Agreements argument as seeking Rule 12(b)(6) dismissal, although DMV fails to clarify whether it makes this argument under Rule 12(b)(6) or Rule 12(b)(1). It is true that the standard for considering evidence differs between the two Rules. See, e.g., Davis v. Yeroushalmi, 985 F. Supp. 2d 349, 357 (E.D.N.Y. 2013) ("[W]hile the court is bound by the pleadings and certain other limited evidence when ascertaining the sufficiency of the complaint with respect to a Rule 12(b)(6) motion, a motion under Rule 12(b)(1) permits examination of additional, extrinsic evidence."). However, DMV has provided no authority that Rule 12(b)(1) applies to DMV's argument that Robinson released her claims. See Shakur v. Bruno, No. 3:12-CV-984 (SRU), 2014 WL 645028, at *2 (D. Conn. Feb. 18, 2014) ("The defendant references Rule 12(b)(1)[ ] and argues that the [document allegedly releasing claims] may be considered by the court in order to determine whether it has subject matter jurisdiction. Although the existence of the [document] may be a basis for the court to deny relief, the defendant has provided no authority indicating that the existence of the [document] deprives the court of subject matter jurisdiction over the case. Thus, counsel's reliance on Rule 12(b)(1) is misplaced."). Therefore, DMV is not prejudiced by the court's application of the Rule 12(b)(6) standard to the Stipulated Agreements argument.

heavily upon its terms and effect, which renders the document
integral to the complaint.

Chambers v. Time Warner, Inc., 282 F.3d 147, 152–53 (2d Cir. 2002) (internal quotation

marks and citations omitted).

Here, the Stipulated Agreements are not "attached to" the Complaint.  See id. at

152; see also DeLuca v. AccessIT Grp., Inc., 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010)

("Whether a document is attached to a complaint is self evident.").

For the Stipulated Agreements to be "incorporated in [the Complaint] by

reference," Chambers v. Time, 282 F.3d at 152, the Complaint "must make a clear,

definite and substantial reference to" the Stipulated Agreements, DeLuca, 695 F. Supp.

2d at 60 (internal quotation marks omitted).  For a complaint to "merely discuss[ certain]

documents" does not constitute incorporation by reference.  Cosmas v. Hassett, 886

F.2d 8, 13 (2d Cir. 1989).  Similarly, documents are not deemed incorporated merely

because the complaint "present[s] short quotations from" them.  Id. at 13; see also Fine

v. ESPN, Inc., 11 F. Supp. 3d 209, 221 n.15 (N.D.N.Y. 2014) ("[L]imited quotations or

references to a document in a complaint are insufficient to deem an entire document

incorporated into the complaint.").  Rather, "incorporation by reference" refers to "[a]

method of making a secondary document part of a primary document by including in the

primary document a statement that the secondary document should be treated as if it

were contained within the primary one."  Incorporation by Reference, Black's Law

Dictionary (10th ed. 2014).

Here, the Complaint makes references to the First Stipulated Agreement, see

Compl. at 3, and also makes references to one of the two Stipulated Agreements

without identifying which Agreement is being referenced, see id. at 5–6.  However, the

Complaint does not indicate that either of the Stipulated Agreements should be treated as if contained within the Complaint. Thus, the Stipulated Agreements are not incorporated by reference in Robinson's Complaint.

For the Stipulated Agreements to be "integral to the [C]omplaint," Chambers v. Time, 282 F.3d at 153, Robinson

> must have (1) actual notice of the extraneous information and (2) relied upon the [Stipulated Agreements] in framing the [C]omplaint. Mere notice or possession is not enough for a court to treat an extraneous document as integral to a complaint; the complaint must rely heavily upon the document's terms and effect for that document to be integral. Even if a document meets the twin requirements of integrality—reliance and notice—a court still may not consider it on a motion to dismiss if there is a dispute regarding the authenticity or accuracy of the document or the relevance of the document to the dispute.

DeLuca, 695 F. Supp. 2d at 60 (internal quotation marks, brackets, and citations omitted). Here, Robinson had "actual notice of" the Stipulated Agreements, because she signed them. However, Robinson has not "relied upon" the Stipulated Agreements "in framing" her Complaint to this court. Compl. at 60. The thrust of Robinson's Complaint is that DMV unlawfully suspended and terminated her. While one or both of the Stipulated Agreements are mentioned, they are simply mentioned as part of the events surrounding Robinson's first suspension and her termination, and the Stipulated Agreements do not appear to be the basis of Robinson's Complaint. The court concludes that the Stipulated Agreements are not "integral to the [C]omplaint." Chambers v. Time, 282 F.3d at 153.

Furthermore, there is a "dispute regarding the . . . relevance of the [Stipulated Agreements] to the dispute." DeLuca, 695 F. Supp. 2d at 60. The pro se Complaint makes clear that Robinson disputes the validity of the First Stipulated Agreement: The

Complaint alleges that, after Robinson received the First Stipulated Agreement, she "requested a grievance hearing regarding," inter alia, the First Stipulated Agreement. Compl. at 3.  The court construes this allegation as an allegation that Robinson viewed the First Stipulated Agreement as improper.  Furthermore, the Complaint alleges that, despite her repeated protestations, Robinson "was told by HR and the Union" that she "was going to be terminated" if she "didn't sign the" First Stipulated Agreement.  Id. at 3. If Robinson is correct that she was being disciplined for discriminatory reasons, any termination for these same reasons could also have constituted unlawful discrimination. Thus, the court construes the Complaint's dual contentions that (1) DMV was discriminating against Robinson by punishing her, and (2) DMV forced her to choose between the First Stipulated Agreement and termination, as an attack on the validity of the First Stipulated Agreement.  See Bormann v. AT&T Commc'ns, 875 F.2d 399, 403 (2d Cir. 1989) (stating that factors to consider in determining the validity of an employee's waiver of Title VII rights include, inter alia,  "whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law.").

Robinson's Response to the Motion to Dismiss (Doc. No. 31) also makes clear that she disputes the validity of the Stipulated Agreements.  Without clarifying which one, Robinson argues that one of the Stipulated Agreements "violated" her "collective bargaining contract rights."  Response at 1.  Robinson also states that DMV "threaten[ed] to terminate [her] employment if [she] didn't sign [one of the] Stipulated Agreement[s]."  Id. at 2.  Robinson states that she believes DMV gave her this ultimatum "because [she] was a Black African American woman."  Id. at 2.  Such an

allegation, if proven, would suggest that DMV compelled Robinson to sign the Stipulated Agreement due to racial animus.  By making the above-mentioned arguments, Robinson disputes the validity, and thus the relevance to the present lawsuit, of the Stipulated Agreements.  The fact that Robinson "dispute[s]" the "relevance of the" Stipulated Agreements, DeLuca, 695 F. Supp. 2d at 60, is an additional reason why this court does not treat the Stipulated Agreements as "integral to the [C]omplaint."  Chambers v. Time, 282 F.3d at 153.

In addition to considering documents integral to the Complaint "in ruling on a Rule 12(b) motion to dismiss, [the Second Circuit has] acknowledged that the court may also consider matters of which judicial notice may be taken."  Apotex Inc. v. Acorda Therapeutics, Inc., 823 F.3d 51, 60 (2d Cir. 2016) (internal quotation marks omitted). However, courts in this Circuit have repeatedly refused to take judicial notice of documents purportedly releasing claims, where the documents—unlike a judicially-approved settlements—were not contained within the docket of a previous lawsuit.  See Edo v. Martiny, No. 15-CV-202 (CBA), 2016 WL 7839337, at *2 (E.D.N.Y. Aug. 26, 2016) (collecting cases), report and recommendation adopted, No. 15-CV-202 (CBA) (SMG), 2017 WL 785653 (E.D.N.Y. Mar. 1, 2017).  Here, there is no reason to believe that the Stipulated Agreements were previously presented to a court.  In fact, even where releases were previously filed with a court, where "the validity [ ] of the release" was "determinative," a court in the Northern District of New York concluded that judicial notice was inappropriate because the court was "not capable of determining the validity and effect of the releases solely by reference to the documents themselves."  Beede v. Stiefel Labs., Inc., No. 1:13-CV-120 (MAD) (RFT), 2014 WL 896725, at *5 (N.D.N.Y.

Mar. 6, 2014).  Beede is instructive because, here, "the validity" of the Stipulated

Agreements is "determinative," and the court is "not capable of determining the validity

and effect of the" Stipulated Agreements "solely by reference to the documents

themselves."  See id. at *5; see also Bormann, 875 F.2d at 403 (discussing factors to

consider in determining validity of Title VII waiver, most of which cannot be determined

from face of a waiver).  For these reasons, the court concludes that judicial notice of the

Stipulated Agreements is not appropriate here.  Because (1) the Stipulated Agreements

are not "include[d]" in the Complaint, Chambers v. Time, 282 F.3d at 152, and (2) the

court declines to take judicial notice of them, the court does not consider the effect of

the Stipulated Agreements at this motion to dismiss stage.  Thus, any possible release

of claims contained in the Stipulated Agreements does not warrant dismissal of any of

Robinson's claims at this time.

   Moreover, even if the court were to consider the Stipulated Agreements at this

stage, the court would need more evidence to determine whether the Stipulated

Agreements bar any of Robinson's claims.

   "Under Title VII, an employee may waive a discrimination claim" only if "the

release is made knowingly and voluntarily."  Espinal v. Trustees of Columbia Univ. in

the City of N.Y., No. 16 CIV. 4100 (CM), 2016 WL 6561406, at *5 (S.D.N.Y. Oct. 24,

2016).  The Second Circuit has adopted a "totality of the circumstances" test to

determine whether a release was made knowingly and voluntarily.  Bormann, 875 F.2d

at 403.  Factors to consider in applying this test include

> 1) the plaintiff's education and business experience, 2) the
> amount of time the plaintiff had possession of or access to the
> agreement before signing it, 3) the role of plaintiff in deciding
> the terms of the agreement, 4) the clarity of the agreement, 5)

whether the plaintiff was represented by or consulted with an attorney, and 6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law.

Id. at 403.  Faced with a case like that at bar, in which defendants argued that a plaintiff waived his right to sue but the plaintiff challenged the process by which those rights were allegedly waived, a court in the Southern District of New York stated that, "[g]iven the existence of disputed issues of fact, the Court cannot conclude, at the motion to dismiss stage, that Plaintiff knowingly and voluntarily released the [ ] Defendants from liability."  Espinal v. Trustees, 2016 WL 6561406, at *6.  Similarly, here, the court cannot apply the totality of the circumstances test without an opportunity for the parties to submit evidence as to Robinson's "education and business experience" (1), "the amount of time" Robinson "had possession of or access to the" Stipulated Agreements "before signing them" (2), Robinson's "role," if any, "in deciding the terms of the" Stipulated Agreements (3), "whether" Robinson "was represented by or consulted with an attorney" (5), and "whether the consideration given in exchange for the waiver exceeds employee benefits to which" Robinson "was already entitled by contract or law" (6).  Bormann, 875 F.2d at 403.  As for the sixth factor, the Stipulated Agreements both state that they were signed "in lieu of more severe discipline," First Stipulated Agreement at 1, Second Stipulated Agreement at 1, and Robinson states that she was required to sign the Stipulated Agreement to avoid being fired, Compl. at 3.  Thus, to determine that "the consideration given in exchange for the waiver exceeds employee benefits to which" Robinson "was already entitled by contract or law," Bormann, 875 F.2d at 403, the court would need to have already determined that, at the time of the two Stipulated Agreements, DMV had the legal right to punish Robinson more severely, such as by

terminating her. The court has made no such determination. If Robinson is correct that DMV's decision to suspend, and eventually terminate, her constituted illegal discrimination or retaliation, then any other, more severe, adverse employment actions that DMV could have taken against Robinson, such as terminating her earlier or suspending her for longer, surely would likewise have constituted illegal discrimination or retaliation.

The court thus cannot determine the validity of the Stipulated Agreements at this stage. In addition to the fact that it would be improper to take judicial notice of the Stipulated Agreements, the fact that the court needs evidence to determine the validity of the Agreements is a second, independently-sufficient reason that this court does not treat the Agreements as a basis for dismissal at this stage.

C.        Ability to Establish Prima Facie Case

After arguing that the court should dismiss Robinson's claims based on time barring and the Stipulated Agreements, DMV also argues that Robinson "cannot establish a prima facie case on her remaining claims because no adverse action is pled, the claims do not rise to the level of hostile work environment, and her allegations of discrimination are bereft of any specific factual allegations." Mot. to Dismiss. DMV's reference to "remaining claims," id., is premised on the incorrect supposition that the court will have dismissed certain claims based on DMV's arguments with regard to time barring and Stipulated Agreements. Nonetheless, the court addresses the argument that Robinson "cannot establish a prima facie case" under Title VII "because no adverse action is pled, the claims do not rise to the level of hostile work environment, and her allegations of discrimination are bereft of any specific factual allegations." Mot. to

Dismiss.  The court concludes that Robinson has plausibly alleged sufficient facts for her Title VII claims to proceed based on the theories of discrimination and retaliation, as stated in the Recommended Ruling.  See Rec. Ruling at 6–7.  However, this court agrees that Robinson has not plausibly alleged a hostile work environment claim.

As a general matter, Title VII claims are analyzed using the familiar, burden-shifting framework set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Littlejohn v. City of New York, 795 F.3d 297, 307 (2d Cir. 2015).  The first step of this framework requires that, to prove her claims, the plaintiff will ultimately be required to prove a prima facie case of discrimination based on race or retaliation.  Specifically, she will be required to prove that she

> (1) is a member of a protected class; (2) was performing h[er] duties satisfactorily; (3) was discharged [or otherwise suffered an adverse employment action]; and that (4) h[er] discharge [or the other adverse employment action] occurred under circumstances giving rise to an inference of discrimination on the basis of h[er] membership in the protected class [or retaliation].

Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000); see also Locorriere v. NBTY, Inc., No. 13CV7277 (JFB) (ARL), 2016 WL 625618, at *5 (E.D.N.Y. Feb. 17, 2016) (describing broader Title VII prima facie case requirement, to include adverse employment actions beyond discharge, and to include retaliation claims).

However, a plaintiff need not plead a prima facie case of discrimination to survive a motion to dismiss.  See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 515 (2002).  Rather, in the absence of direct evidence of discrimination, a plaintiff must only allege facts that "plausibly support[ ] that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and [that offer] at least minimal support for the proposition that the employer was motivated by discriminatory

intent." Littlejohn, 795 F.3d at 311.  As to the last prong, the facts pled need only give

"plausible support to a minimal inference of discriminatory motivation."  Id. at 311.  The

Second Circuit has identified several ways in which plaintiffs may "alleg[e] facts that . . .

indirectly show discrimination by giving rise to a plausible inference of discrimination."

Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 87 (2d Cir. 2015).  These

allegations could include:

> the employer's continuing, after discharging the plaintiff, to
> seek applicants from persons of the plaintiff's qualifications to
> fill that position; or the employer's criticism of the plaintiff's
> performance in ethnically degrading terms; or its invidious
> comments about others in the employee's protected group; or
> the more favorable treatment of employees not in the
> protected group; or the sequence of events leading to the
> plaintiff's discharge; or the timing of the discharge.

Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994) (citations

omitted); Sellers v. First Student, Inc., No. 16-CV-236 (JCH), 2016 WL 6440111, at *4

(D. Conn. Oct. 28, 2016).

DMV argues that "no adverse action is pled" with respect to Robinson's

"remaining claims."  Mot. to Dismiss.  The court disagrees.  First, Robinson has

plausibly alleged that she was suspended for twenty days from August to November,

2011, and for two days from December 7 to 8, 2011. Compl. at 3–4.  These

suspensions both constitute adverse employment actions.  See, e.g., Deberry v. Hosp.,

No. 12-CV-6251 (SLT) (RLM), 2016 WL 3840673, at *8 (E.D.N.Y. July 12, 2016)

(stating that even one-day suspension constitutes adverse employment action); Waters

v. Gen. Bd. of Glob. Ministries, 769 F. Supp. 2d 545, 558 (S.D.N.Y. 2011) (treating two-

day suspension as adverse employment action); Page v. Connecticut Dep't of Pub.

Safety, Div. of State Police, 185 F. Supp. 2d 149, 157 (D. Conn. 2002) (stating that two-

day suspension is sufficient to plausibly allege adverse employment action).  Second,

Robinson has plausibly alleged that she was terminated.  <u>See</u> Compl. at 5.  Termination

also constitutes an adverse employment action.  <u>See</u> <u>Raspardo v. Carlone</u>, 770 F.3d

97, 126 (2d Cir. 2014) ("Examples of actionable adverse employment actions include

termination of employment . . . .").

DMV argues that Robinson "is unable to plead any facts which could be

construed to allege that the decision not to promote her occurred under circumstances

giving rise to an inference of discrimination."  Def.'s Mem. at 11–12.  As a preliminary

matter, the court does not read the Complaint as alleging that DMV failed to promote

Robinson.  <u>See</u> Compl. at 1–13.  In fact, despite checking other boxes for alleged

adverse employment actions, Robinson declined to check the "[f]ailure to promote" box

on her Complaint form.  <u>Id.</u> at 2.  Rather, the court reads the Complaint as alleging that

DMV suspended Robinson twice, and then terminated her.  <u>See</u> <u>id.</u> at 3–5.  The court

thus construes DMV's argument in this regard as that Robinson has failed to plausibly

allege that any of the adverse employment actions against "her occurred under

circumstances giving rise to an inference of discrimination."  Def.'s Mem. at 11–12.  The

court disagrees, because Robinson has plausibly alleged such circumstances

surrounding her second suspension and her termination.  However, the court agrees

that Robinson has failed to plausibly allege any such circumstances surrounding her

first suspension.

As for Robinson's August through September 2011 suspension, the court agrees

that Robinson has not alleged any facts plausibly supporting a minimal inference of

discriminatory motive.  <u>See</u> <u>id.</u> at 3 (merely describing events leading up to suspension

and arguing that suspension was unfair, without alleging any facts suggesting a racial motivation behind suspension).  Thus, any claims with regard to Robinson's August through September 2011 suspension are dismissed.

However, with respect to Robinson's December 2011 suspension—punishment for engaging in a conflict with a coworker, see id. at 3–4—Robinson has plausibly alleged facts as to DMV's "more favorable treatment of [an] employee[ ] not in the protected group." Chambers v. TRM, 43 F.3d at 37.  Specifically, Robinson alleges that, although she was suspended due to engaging in a July 26, 2011 workplace altercation with a white coworker, the white coworker faced no punishment, despite engaging in the identical altercation.  Compl. at 4.  This allegation of differential punishment between the Caucasian coworker and Robinson is sufficient to provide "at least minimal support for the proposition that [DMV] was motivated by discriminatory intent," in suspending Robinson.  Littlejohn, 795 F.3d at 311.  For example, a court in the Eastern District of New York held that a plaintiff "met her 'minimal' burden" of providing evidence of discrimination where her employer punished her for fighting with coworkers outside of her protected class, but did not punish her coworkers.  Temple v. City of N.Y., No. 06-CV-2162 (RRM) (CLP), 2010 WL 3824116, at *8 (E.D.N.Y. Sept. 23, 2010) (ruling on summary judgment motion); cf. Stepheny v. Brooklyn Hebrew Sch. for Special Children, 356 F. Supp. 2d 248, 260 (E.D.N.Y. 2005) (at summary judgment stage, holding that plaintiff, whom employer terminated for engaging in workplace altercation, failed to offer evidence of discriminatory intent in part because coworker outside of protected class was also fired for engaging in same altercation).  Because she was punished for engaging in an altercation, while a coworker outside of her

protected class was not punished for engaging in the same altercation, Robinson has alleged facts "giving rise to a plausible inference of discrimination," with respect to her December 2011 suspension. <u>Vega</u>, 801 F.3d at 87.

Additionally, with respect to Robinson's termination, Robinson has plausibly alleged facts as to "the timing of the discharge." <u>Chambers v. TRM</u>, 43 F.3d at 37. "A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." <u>Espinal v. Goord</u>, 558 F.3d 119, 129 (2d Cir. 2009). The Second Circuit has "not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." <u>Id.</u> at 129 (internal quotation marks omitted). Rather, a court must "exercise its judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases." <u>Id.</u> at 129. Here, Robinson alleges that "DMV terminated" her "employment after" she "fil[ed]" her "discrimination complaint against" DMV. Compl. at 5. Robinson filed her First CHRO Complaint (Doc. No. 28-2) on May 24, 2012. <u>See</u> First CHRO Compl. at 3. Robinson's pursuit of her employment discrimination claims against DMV continues presently, in this court. Thus, Robinson has been pursuing employment discrimination claims against DMV from May 24, 2012, to the present, and was pursuing such claims in 2013, when she was terminated. The allegation that DMV terminated Robinson while she was pursing discrimination claims against DMV is sufficient to provide "at least minimal support for the proposition that [DMV] was motivated by [retaliatory] intent" in terminating Robinson. <u>Littlejohn</u>, 795 F.3d at 311.

DMV also argues that Robinson has failed to plausibly allege a hostile work environment claim.  See Mot to Dismiss; Def.'s Mem. at 13.  The court agrees.  To assert a claim for hostile work environment in violation of Title VII of the Civil Rights Act, a plaintiff must establish: (1) that her "workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered," and (2) "that a specific basis exists for imputing the objectionable conduct to the employer."  See Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002).  Robinson has not plausibly alleged "that her workplace was permeated with discriminatory intimidation, ridicule, and insult."  Id. at 373.  Robinson alleges numerous conflicts that occurred between herself and others in her workplace, but does not plausibly allege that any of these conflicts involved "discriminatory" behavior by Robinson's coworkers.  See Compl. at 3–5.  To the extent that the Complaint may be construed as alleging a hostile work environment, such hostile work environment claim is thus dismissed.

     D.       <u>Jury Demand</u>

Additionally, DMV "moves to strike" Robinson's "jury claim," because "there is no right to a trial by jury on claims of equitable relief under [ ] Title VII."  Mot. to Dismiss; <u>see also</u> Def.'s Mem. at 16–17.

Where a Title VII plaintiff "seeks compensatory or punitive damages[,] any party may demand a trial by jury."  42 U.S.C. § 1981a(c)(1); <u>see also</u> <u>Robinson v. Metro-N. Commuter R.R. Co.</u>, 267 F.3d 147, 158 (2d Cir. 2001) ("The 1991 [Civil Rights] Act enhanced Title VII's remedial scheme for disparate treatment claims.  In addition to back pay and front pay, it authorized the recovery of compensatory and punitive

damages in disparate treatment disputes, <u>see</u> 42 U.S.C. § 1981a(a)(1), and afforded a jury trial where these additional remedies are sought, <u>see</u> 42 U.S.C. § 1981a(c).").

However, "lost wages under Title VII," such as back pay, "are equitable and, therefore, need not be tried by a jury." <u>Thomas v. iStar Fin., Inc.</u>, 652 F.3d 141, 152 (2d Cir. 2011). Thus, "a party is generally not entitled to a jury determination on the question" of "back pay." <u>Broadnax v. City of New Haven</u>, 415 F.3d 265, 271 (2d Cir. 2005); <u>see also</u> <u>Tse v. UBS Fin. Servs., Inc.</u>, 568 F. Supp. 2d 274, 294 (S.D.N.Y. 2008) ("[P]arties in a Title VII employment discrimination case are not entitled to a jury trial on the issue of back pay.").

Here, Robinson seeks both back pay and compensatory damages. <u>See</u> Compl. at 8, 12. She is entitled to "demand a trial by jury" on her claim for "compensatory . . . damages." 42 U.S.C. § 1981a(c)(1). However, she lacks such entitlement as to her claim for back pay. <u>See</u> <u>Broadnax</u>, 415 F.3d at 271. Thus, the court strikes the jury trial demand to the extent that it seeks jury determination of the issue of back pay, but does not strike the demand to the extent that it seeks jury determination of the issue of compensatory damages.

## V.  CONCLUSION

The Motion to Dismiss (Doc. No. 28) is **granted in part and denied in part**. Any claims with regard to Robinson's August through September 2011 suspension are **dismissed**. However, the plaintiff has the right to replead claim(s) relating to her first suspension if she has a factual basis to plausibly allege such claim(s). Additionally, any hostile work environment claim is **dismissed**. The plaintiff similarly has the right to replead claim(s) of hostile work environment if she has a factual basis to plausibly allege such claim(s). This action will proceed on Robinson's claims of discrimination

and retaliation stemming from her December 2011 suspension and her termination. Additionally, the jury trial demand is **stricken** to the extent that it seeks jury determination of the issue of back pay. However, the jury trial demand remains to the extent that it seeks jury determination of the issue of compensatory damages.

**SO ORDERED.**

Dated at New Haven, Connecticut this 23rd day of May, 2017.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge