**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| MELBA C. ROBINSON, | : | |
| Plaintiff | : | CIVIL CASE NO. |
| | : | 3:16cv1148(JCH) |
| v. | : | |
| | : | |
| CONNECTICUT DEPARTMENT | : | |
| OF MOTOR VEHICLES, | : | DECEMBER 20, 2018 |
| Defendant. | : | |

**RULING RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**(DOC. NO. 64) AND PLAINTIFF'S MOTION TO STRIKE (DOC. NO 70).**

The plaintiff, Melba C. Robinson ("Robinson"), brings this <u>pro se</u> employment

discrimination action against the defendant, the State of Connecticut Department of

Motor Vehicles ("DMV"). Robinson "asserts claims pursuant to Title VII of the Civil

Rights Act, 42 U.S.C. §§ 2000e et seq. ('Title VII')," consisting of "claims for

discrimination on the basis of race and color," including "both direct discrimination

claims and claims of retaliation." Rec. Ruling (Doc. No. 12) (Merriam, J.) at 1, 6–7,

<u>recommendation adopted</u> Endorsement Order (Doc. No. 13).[1]

The court previously granted in part DMV's First Motion to Dismiss (Doc. No. 28)

and granted DMV's Second Motion to Dismiss (Doc. No. 46). DMV seeks summary

judgment on Robinson's remaining claims. Also before the court is Robinson's Motion

to Strike (Doc. No. 70). For the reasons stated below, DMV's Motion for Summary

Judgment is **granted**, and Robinson's Motion to Strike is **denied.**

---

[1] Robinson also initially "assert[ed] claims pursuant to . . . the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq. ('ADA')." Rec. Ruling (Doc. No. 12) (Merriam, J.) at 1, <u>recommendation adopted</u> Endorsement Order (Doc. No. 13). This court has dismissed all ADA claims. <u>See</u> Rec. Ruling at 8.

## I.    BACKGROUND

Robinson filed her original Complaint, pro se, on July 8, 2016. See Compl. (Doc. No. 1), asserting "claims pursuant to Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e et seq. ('Title VII')," consisting of "claims for discrimination on the basis of race and color," including "both direct discrimination claims and claims of retaliation." Rec. Ruling at 1, 6–7, recommendation adopted Endorsement Order (Doc. No. 13). She filed a First Amended Complaint on October 12, 2016. See First Am. Compl. (Doc. No. 15). The court struck the First Amended Complaint as late and directed service of the Complaint. See Endorsement Order (Doc. No. 16). DMV filed its First Motion to Dismiss on March 9, 2017. See First Mot. to Dismiss (Doc. No. 28).

The court ruled on DMV's First Motion to Dismiss on May 23, 2017, granting it in part and denying it in part. See Ruling on First Mot. to Dismiss (Doc. No. 40). The court dismissed Robinson's discrimination claim stemming from her August through September 2011 suspension and her hostile work environment claim, but gave Robinson leave to replead those claims if she had a factual basis upon which to plausibly allege those claims. Id. at 27. The court denied DMV's First Motion to Dismiss as to Robinson's discrimination claim stemming from her December 2011 suspension and her retaliation claim stemming from her termination. Id. at 27–28.

Robinson filed a Second Amended Complaint on June 12, 2017. Second Am. Compl. (Doc. No. 43). DMV thereafter filed a Second Motion to Dismiss (Doc. No. 46). The court dismissed Robinson's hostile work environment claims with prejudice. See Ruling on Second Motion to Dismiss (Doc. No. 60) at 6. The court noted that Robinson's claims of discrimination and retaliation stemming from her December 2011 suspension and her termination would proceed. Id.

DMV filed the instant Motion for Summary Judgment on March 16, 2018. <u>See</u> Motion for Summary Judgment (Doc. No. 64). DMV seeks summary judgment in its favor on Robinson's remaining claims of discrimination related to her two suspensions, and retaliation related to her termination. Also before the court is Robinson's Motion to Strike the Affidavit of Daniel Callahan, which she filed on June 6, 2018. <u>See</u> Motion to Strike (Doc. No. 70).

## II.    STANDARD OF REVIEW

Summary judgment is proper only where, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the moving party bears the burden of establishing the absence of any genuine issue of material fact. <u>Zalaski v. City of Bridgeport Police Dep't</u>, 613 F.3d 336, 340 (2d Cir. 2010). If the moving party satisfies that burden, the nonmoving party must set forth specific facts demonstrating that there is 'a genuine issue for trial. <u>Wright v. Goord</u>, 554 F.3d 255, 266 (2d Cir. 2009). A genuine issue exists where the evidence is such that a reasonable jury could decide in the non-moving party's favor. <u>See, e.g.</u>, <u>Rojas v. Roman Catholic Diocese of Rochester</u>, 660 F.3d 98, 104 (2d Cir. 2011) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986)).

The court's role at summary judgment "is to determine whether genuine issues of material fact exist for trial, not to make findings of fact." <u>O'Hara v. Nat. Union Fire Ins. Co. of Pittsburgh</u>, 642 F.3d 110, 116 (2d Cir. 2011). Unsupported allegations do not create a material issue of fact and cannot overcome a properly supported motion for summary judgment. <u>See</u> <u>Weinstock v. Columbia Univ.</u>, 224 F.3d 33, 41 (2d Cir. 2000). The non-moving party "may not rely on mere conclusory allegations nor speculation, but

3

instead must offer some hard evidence showing that [their] version of the events is not wholly fanciful." D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir.1998) (collecting cases).  Additionally, the evidence the court considers in ruling on a motion for summary judgment must be admissible evidence, or evidence that could be readily reduced to an admissible form at trial.  See LaSalle Bank National Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 205 (2d Cir. 2005); Santos v. Murdock, 243 F.3d 681, 683 (2d Cir. 2001) ("Affidavits submitted to defeat summary judgment must be admissible themselves or must contain evidence that will be presented in an admissible form at trial.") (citation omitted).

## III.   FACTS[2]

Robinson began working at DMV in May 2007.  Def.'s Local Rule 56(a)1 Statement of Facts ("DMV 56(a)1") (Doc. No. 64-2) ¶ 12; Pl.'s Local Rule 56(a)2 ("Robinson 56(a)2") (Doc. No. 72) ¶ 12.  In June 2011, Robinson was involved in a dispute with a DMV customer.  According to Robinson, the customer threw documents at her.  See Robinson 56(a)2 ¶ 26.  Robinson slammed the documents on her workspace and stated, using an expletive, that she was tired of the way customers treated DMV employees.  Id.

---

[2] The facts are taken from Robinson's Statement of Facts (Doc. No. 72), Robinson's Statement of Additional Facts (Doc. No. 73), and DMV's Statement of Facts (Doc. No. 64-2).  Where facts are taken from DMV's Statement of Facts, they are undisputed or admitted, unless otherwise noted.

In her Statement of Facts, Robinson frequently notes her objections to DMV's Statement of Facts without providing a specific citation to (1) an affidavit of a witness competent to testify as to the facts at trial, or (2) other evidence that would be admissible at trial, as required by the Federal and Local Rules of Civil Procedure.  See e.g., Robinson 56(a)2 ¶¶ 10, 18–21, 26–27.  Where Robinson objects to or denies DMV's statements of fact that are supported by evidence, without providing evidence to support her objection, the court deems the statements admitted.  See D. Conn. L. Civ. R. 56(a)3 ("Failure to provide specific citations to evidence in the record as required by this Local Rule may result in the Court deeming admitted certain facts that are supported by the evidence in accordance with Local Rule 56(a)1").

Lucy Manente ("Manente") served as Human Resources Manager for the DMV. DMV 56(a)1 ¶¶ 19–22; Robinson 56(a)2 ¶¶ 19–22. Manente received an email from Agustin Roman ("Roman"), the DMV Branch Manager, on June 7, 2011, which stated that Roman had observed Robinson yelling and cursing at a customer. DMV 56(a)1 ¶ 23; Robinson 56(a)2 ¶ 23. Manente was assigned to investigate the incident. DMV 56(a)1 ¶ 24; Robinson 56(a)2 ¶ 24. At the conclusion of the investigation, Robinson signed a Last Chance Stipulated Agreement, in which she agreed to a 20-day suspension. DMV 56a(1) ¶ 32; Robinson 56a(2) ¶ 32.[3]

On July 26, 2011, DMV Human Resources received information indicating that Robinson had been involved in a dispute with a coworker. See DMV 56a(1) ¶ 38; Robinson 56a(2) ¶ 38. Manente conducted a second investigation and determined that Robinson's conduct on July 26, 2011 violated DMV policies and Robinson's Last Chance Stipulated Agreement, and that the conduct warranted disciplinary action. DMV 56a(1) ¶ 42; Robinson 56a(2) ¶ 42. Manente also concluded that the coworker involved in the dispute had violated DMV policies and should be disciplined. Robinson 56a(2) ¶ 49. Robinson signed a Second Stipulated Agreement on December 7, 2011. DMV 56a(1) ¶ 47; Robinson 56a(2) ¶ 49.[4] Robinson served a two-day suspension as part of the Agreement. DMV 56a(1) ¶ 47; Robinson 56a(2) ¶ 47.

---

[3] Throughout her Local Rule 56a(2) Statement of Facts, Robinson objects to DMV's citation to the Affidavit of Daniel Callahan, on the basis that Callahan lacked personal knowledge of the events described. See, e.g., DMV 56a(1) ¶¶ 32, 51, 61–63; Robinson 56a(2) ¶¶ 32, 51, 65–63. However, Callahan served as a Human Resources Administrator at DMV. See DMV 56a(1) ¶ 17. In that role, he became acquainted with the DMV records concerning this case. Id. ¶ 18. Callahan's Affidavit is admissible evidence or could readily be reduced to admissible form. It is therefore properly submitted as evidence in support of a summary judgment motion.

[4] The court notes that Robinson objects that she did not sign a Second Last Chance Agreement. Robinson 56a(2) ¶ 47. The court concludes that a dispute of fact exists as to whether Robinson's second

On August 9, 2012 Robinson attended a meeting with DMV and her Union regarding her unscheduled absences. DMV 56a(1) ¶¶ 51–52; Robinson 56a(2) ¶¶ 51–52. Robinson had received unsatisfactory ratings in her performance reviews for two consecutive rating periods. DMV 56a(1) ¶ 60; Robinson 56a(2) ¶ 60. A pre-disciplinary meeting was held on January 8, 2013. DMV 56a(1) ¶ 64–65; Robinson 56a(2) ¶ 64–65. Robinson was notified on February 15, 2013, that her employment with DMV was being terminated. DMV 56a(1) ¶ 68; Robinson 56a(2) ¶ 68.

Robinson filed a Complaint with the CHRO, alleging discrimination, on May 24, 2012. DMV 56a(1) ¶ 4; Robinson 56a(2) ¶ 4. Robinson filed an Amended Complaint with CHRO, alleging retaliation, on February 25, 2014. DMV 56a(1) ¶ 5; Robinson 56a(2) ¶ 5.

## IV.    DISCUSSION

### A.    Motion to Strike

Robinson filed a Motion to Strike the Affidavit of Daniel Callahan on June 6, 2018. See Motion to Strike (Doc. No. 70). Robinson seeks to strike the Affidavit (Doc. No. 64-6), which was submitted as an exhibit to DMV's Motion for Summary Judgment, because Callahan lacked personal knowledge of the facts to which he swore. Id. at 1. The court need not reach the merits of Robinson's arguments, nor those of the DMV in its Objection, because Robinson's Motion to Strike is barred by the Local Rules. The Local Rules state that "[m]otions to strike . . . statements made in a Rule 56(a) statement or . . . the supporting evidence are prohibited." D. Conn. L. Civ. R. 56(a)4.

---

Agreement was a "Last Chance" agreement. However, DMV present unrebutted evidence that Robinson at the least signed a Second Stipulated Agreement. See Callahan Affid., Ex. 13 (Doc. No. 64-6) at 69.

Callahan's Affidavit is evidence submitted in support of DMV's Motion for Summary Judgment. Robinson's Motion to Strike is therefore denied.

B.  Motion for Summary Judgment

DMV seeks summary judgment in its favor as to Robinson's claims of discrimination and retaliation. See Def.'s Mem. in Supp. of Motion for Summary Judgment ("DMV Mem. in Supp.") (Doc. No. 64-1) at 1. DMV argues that, (1) Robinson's retaliation claim regarding her termination is time-barred, id. at 3; and (2) all of Robinson's claims are barred by the Stipulated Agreements she signed, id. at 8. In the alternative, DMV argues that (1) Robinson failed to meet her burden to provide evidence sufficient to state a prima facie case of discrimination, or to establish that there is a genuine dispute of material fact as to whether DMV's nondiscriminatory basis for its actions were pretextual, id. at 15, 22, 23; and (2) Robinson failed to put forward a prima facie claim of retaliation, id. at 26.

Robinson argues that, (1) her retaliation claims are not time-barred because the doctrine of equitable tolling applies, Robinson Mem. in Opp. to Mot. Summary Judgment (Doc. No. 69) ("Robinson Opp.") at 4; (2) there is a genuine dispute of material fact as to whether Robinson's suspensions were discriminatory, id. at 2–3; and (3) there is a genuine dispute of material fact as to whether Robinson's termination was retaliatory, id. at 4–5. The court first addresses Robinson's retaliation claim, before addressing her discrimination claim.

1.  Equitable Tolling of Retaliation Claim

Robinson claims that DMV terminated her employment in retaliation for Robinson's filing a claim of discrimination with the Connecticut Commission on Human Rights and Opportunities ("CHRO"). See Robinson Opp. at 1, 4–5. DMV argues that

the claims are time-barred. DMV Mem. in Supp. at 3. Robinson responds that the court should equitably toll her retaliation claims. Robinson Opp. at 4.

Robinson was informed on February 15, 2013, that her employment at DMV was being terminated. DMV 56(a)1 ¶ 68; Robinson 56(a)2 ¶ 68. Robinson filed her original Complaint with CHRO, alleging DMV discriminated against her, on May 24, 2012. DMV 56(a)1 ¶ 4; Robinson 56(a)2 ¶ 4. She filed an Amended Complaint with CHRO, alleging retaliation, on February 25, 2014. DMV 56(a)1 ¶ 5; Robinson 56(a)2 ¶ 5. Robinson states that she originally requested that CHRO amend her Complaint to include a retaliation claim on May 2, 2013, but that CHRO never filed the Amended Complaint. Robinson 56(a)2 ¶ 5.

The court concluded, in its Ruling on DMV's First Motion to Dismiss, that Robinson failed to file her retaliation claims in a timely manner. See Ruling Re: First Mot. to Dismiss (Doc. No. 40) at 8. However, the court also concluded that "Robinson plausibly allege[d] facts from which the court [could] infer that equitable tolling may apply, so as to allow her termination claim to proceed . . . ." Id. at 12.

Nothing in the evidence presented by the parties in relation to the pending Motion for Summary Judgment alters the court's finding that Robinson's termination claim, absent equitable tolling, were untimely. Robinson could not have filed a termination claim with the Equal Employment Opportunity Commission ("EEOC") until after she had filed the claim with the CHRO. See 42 U.S.C. § 2000e-5(c) ("[N]o charge may be filed [with the EEOC] by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State [ ] law, unless such proceedings have been earlier terminated."). Moreover, any claim had to be filed with the EEOC

within 300 days from the date of the alleged retaliatory act.  See E.E.O.C. v.

Commercial Office Prod. Co., 486 U.S. 107, 110 (1988) ("If a complainant initially

institutes proceedings with a state [ ] agency with authority to grant or seek relief from

the practice charged, the time limit for filing with the EEOC is [ ] 300 days.").

Robinson filed her Amended Complaint 375 days after she was notified of her

termination, and 361 days after her termination became effective.  DMV 56(a)1 ¶ 68;

Robinson 56(a)2 ¶ 68 (noting that on February 15, 2013, Robinson received a letter

informing her she was being terminated, effective March 1, 2013).  Ordinarily, a court

dismisses a Section VII claim the plaintiff failed to file with the EEOC in a timely manner.

See Pilman v. N.Y. City Hous. Auth., 64 F. App'x 293, 296 (2d Cir. 2003) ("[T]he District

Court properly dismissed [plaintiff's] discrimination claim as time-barred.  Under [ ] Title

VII . . . , a claimant may bring suit in federal court only if she has filed a timely complaint

with the EEOC.").  However, the Supreme Court has held that "filing a timely charge of

discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court,

but a requirement that, like a statute of limitations, is subject to . . . equitable tolling."

Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982).

The Second Circuit has held that "equitable tolling is only appropriate in rare and

exceptional circumstances, in which a party is prevented in some extraordinary way

from exercising [her] rights."  Zerilli-Edelglass v. N.Y. City Transit Auth., 333 F.3d 74, 80

(2d Cir. 2003) (citations and alterations omitted).  In determining whether equitable

tolling applies, "a district court must consider whether the person seeking application of

the equitable tolling doctrine (1) has acted with reasonable diligence during the time

period she seeks to have tolled, and (2) has proved that the circumstances are so

extraordinary that the doctrine should apply." Id. at 80–81 (quotation omitted). The burden of demonstrating that equitable tolling is appropriate lies with the plaintiff. Boos v. Runyon, 201 F.3d 178, 185 (2d Cir. 2000) (citing Miller v. International Tel. & Tel. Corp., 755 F.2d 20, 24 (2d Cir.1985)).

Robinson first requested that CHRO amend her Complaint on May 2, 2013. DMV 56(a)1 ¶ 7; Robinson 56(a)2 ¶ 7. She also reached out to CHRO via telephone on multiple occasions to determine whether an Amended Complaint had been filed. DMV 56(a)1 ¶ 10; Robinson 56(a)2 ¶ 10. Robinson's Complaint was assigned to at least two CHRO investigators, Susan Lockery and Debra Drexler. See Affidavit of Melba Robinson ("Robinson Affid.") (Doc. No. 69-4) at 20, 23. Regional Director Tanya Hughes ("Hughes") was also involved in CHRO's processing of Robinson's Complaint. See id. at 24. No CHRO representative filed an Amended Complaint on Robinson's behalf.

DMV argues that Robinson has failed to meet her burden to raise a genuine issue of material fact as to whether (1) she acted diligently during the time period she seeks to have tolled, and (2) the circumstances of her case are extraordinary. See DMV Mem. in Supp. at 5–6. DMV argues that Robinson was not unaware of her cause of action due do DMV's conduct, and failed to provide evidence of a medical or mental impairment that prevented her from filing an Amended Complaint. Id. DMV adds that, while Robinson contacted two CHRO employees about filing an Amended Complaint, it was Robinson's, not CHRO's, responsibility to do so. Id. at 6. DMV argues that Robinson's communication was insufficient to establish that she acted diligently. See id. (noting that Robinson "did not have any other conversations" with CHRO staff).

Finally, DMV argues that Robinson could have travelled to the CHRO Regional Office to fill out an Amended Complaint form in person, but she failed to do so.  Id.

Robinson first argues that equitable tolling is appropriate because she was pregnant at the time her employment was terminated, and that she experienced a "challenging pregnancy."  Robinson Opp. at 4.  In her Opposition, Robinson references, without citation to any evidence, medication she was prescribed during her pregnancy, as well as tests she underwent.  See Robinson Opp. at 4.  Robinson also cites to her Affidavit as evidence of her challenging pregnancy.  See Robinson Affid. ¶ 30.  Even accepting as true Robinson's statement that she experienced a "challenging pregnancy," she has provided no evidence as to what challenges she faced, and no evidence as to her prescribed medication, testing, or other events during the pregnancy, so as to raise a genuine dispute of material fact as to whether her pregnancy prevented her from filing an Amended Complaint.  Robinson also cited to a birth certificate to support her argument.  See id. at 25.  However, the document does not support Robinson's claim that a difficult pregnancy prevented her from filing an Amended Complaint with CHRO.  At most, the birth certificate is evidence of the fact that Robinson was pregnant at the time of her termination and gave birth to a child on August 22, 2013.  See id.

Unsupported allegations do not create a material issue of fact and cannot overcome a properly supported motion for summary judgment.  See Weinstock, 224 F.3d at 41.  The court concludes that Robinson has failed to demonstrate the existence of a genuine dispute of material fact as to whether the circumstances she faced during

her pregnancy (1) prevented her from filing a claim with CHRO, and (2) were so extraordinary as to warrant equitable tolling.

Robinson also argues that equitable tolling is appropriate because she requested that CHRO file an Amended Complaint on her behalf, and CHRO failed to do so. As noted above, <u>see</u> <u>supra</u> at 9, equitable tolling is appropriate where the person seeking application of the equitable tolling doctrine (1) acted with reasonable diligence during the period she seeks tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply. <u>Zerilli-Edelglass</u>, 333 F.3d at 80–81. Robinson states that she informed CHRO Regional Manager Hughes that she wished to file an Amended Complaint on May 2, 2013. Robinson 56(a)2 ¶ 5. Robinson received an email from Susan Lockery on October 17, 2013, regarding Robinson's request to view her CHRO file. <u>See</u> Robinson Statement of Additional Facts ("Robinson 56a(3)") (Doc. No. 73) ¶ 46.[5] Robinson stated that she "wanted to view [her] file to see if Ms. Hughes started the process of amending [her] complaint." <u>Id.</u> Robinson claims that she spoke to Debra Draxler about amending her Complaint during a meeting in January 2014. Robinson 56(a)3 ¶ 48. Robinson also argues that CHRO repeatedly failed to return her phone calls and did not respond to voicemails. Robinson 56(a)2 ¶¶ 5, 10. Moreover, Robinson states, she was "never instructed" by CHRO to file her own Amended Complaint. <u>Id.</u> ¶ 11.

DMV argues that equitable tolling is unwarranted because (1) DMV did not mislead Robinson; (2) filing an Amended Complaint was Robinson's, not the CHRO's,

---

[5] The court notes that, in support of this statement, Robinson cites to an "Exhibit 19" to her Affidavit. <u>See</u> Robinson 56(a)3 ¶ 46. The document was attached to her Statement of Additional Facts. <u>See</u> <u>id.</u> at 12.

responsibility; and (3) the circumstances of the case are not so extraordinary so as to warrant equitable tolling.  See DMV Mem. in Supp. at 5–6.

 Even assuming, arguendo, that Robinson's communications to CHRO regarding her Amended Complaint constitute sufficient diligence to meet the first prong of the equitable tolling test, there is no genuine dispute of material fact as to whether "the circumstances [in this case] are so extraordinary that the doctrine should apply." Zerilli-Edelglass, 333 F.3d at 80.  The Supreme Court recently reaffirmed that "the second prong of the equitable tolling test is met only where the circumstances that caused a litigant's delay are both extraordinary and beyond its control." Menominee Indian Tribe of Wisconsin v. United States, 136 S. Ct. 750, 756, (2016) (emphasis in original); see also Frederick v. JetBlue Airways Corp., 671 F. App'x 831, 832 (2d Cir. 2016) (summary order).

Here, there is no genuine dispute of material fact that the circumstances that caused Robinson's delay were within her control.  While Robinson could not make CHRO file an Amended Complaint on her behalf, she could have filed the Amended Complaint herself.  Moreover, there is no evidence in this case that any CHRO employee misled Robinson by saying that they would, in fact, file an Amended Complaint, or that any CHRO employee told Robinson that an Amended Complaint had been filed at any time.

Robinson provided evidence that CHRO was delayed in its investigation of Robinson's claim, and argues that CHRO was unresponsive to her communication. However, this did not prevent Robinson from filing an Amended Complaint herself. Robinson could have travelled to a local branch office to file an Amended Complaint but

failed to do so.  Robinson pointed to no admissible evidence to support an argument that she was unable to file a Complaint.  The court concludes that there is no genuine dispute of material fact as to whether the circumstances that caused Robinson's delay in filing were both extraordinary and beyond Robinson's control.  The court therefore concludes that equitable tolling of Robinson's claim is not warranted.  Because Robinson's Amended CHRO Complaint was untimely, DMV's Motion for Summary Judgment is granted as to Robinson's claim of retaliation.

2.      Discrimination Claim

Robinson's remaining claims are that DMV discriminated against her on two instances by suspending her.  The first claim stems from Robinson's August-September 2011 20-day suspension.  The second claim stems from Robinson's December 2011 two-day suspension.  DMV argues that summary judgment is appropriate as to both claims because (1) the claims are barred by Stipulated Agreements, see DMV Mem. in Supp. at 8, and (2) Robinson's claim fails under the burden-shifting test established in McDonnell Douglas Corp v. Green, 411 U.S. 792, 802 (1982), see DMV Mem. in Supp. at 15.  The court addresses the arguments in turn.

a.      Waiver of Claims

DMV argues that Robinson's discrimination claims are barred because Robinson waived any right to sue by entering into Stipulated Agreements with DMV after each incident leading to suspension.  DMV Mem. in Supp. at 8.  Robinson argues that she was coerced into signing the first Stipulated Agreement because when she told her Union Representative that she wanted to file a grievance as to the suspension and Stipulated Agreement, she was told that if she did not sign the document she would be fired.  See Robinson 56a(2) ¶ 34–35.  Robinson argues that she signed the Second

14

Stipulated Agreement and agreed to serve a two-day suspension because she thought she and the coworker with whom she had argued would face the same or similar punishment.  See Robinson 56a(2) ¶ 48; Affid. of Daniel Callahan, Ex. 10 (Doc. No. 64-6) at 25–26.

Under Title VII, an employee may waive a discrimination claim only if the release is knowing and voluntary.  The Second Circuit has adopted a "totality of the circumstances" test to determine whether a waiver was knowing and voluntary.  See Bormann v. AT & T Commc'ns, Inc., 875 F.2d 399, 403 (2d Cir. 1989).  Factors to consider in applying this test include:

> 1) the plaintiff's education and business experience, 2) the amount of time the plaintiff had possession of or access to the agreement before signing it, 3) the role of plaintiff in deciding the terms of the agreement, 4) the clarity of the agreement, 5) whether the plaintiff was represented by or consulted with an attorney, and 6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law.

Not all the factors need be satisfied before a waiver is deemed enforceable.  Espinal v. Trustees of Columbia Univ. in the City of New York, No. 16 CIV. 4100 (CM), 2016 WL 6561406, at *5 (S.D.N.Y. Oct. 24, 2016) (quoting Cordoba v. Beau Dietl & Assocs., No. 02 CIV.4951 MBM, 2003 WL 22902266, at *5 (S.D.N.Y. Dec. 8, 2003)).  "The essential question is whether, in the totality of circumstances, the individual's waiver of his right can be characterized as knowing and voluntary."  Id.

The Bormann analysis is particularly fact-intensive.  However, as detailed below, see infra at 15–22, the court concludes that, even assuming that a genuine dispute of material fact exists as to whether Robinson waived her discrimination claims, her claims fail under the burden-shifting analysis established in McDonnell Douglas Corp. v.

<u>Green</u>, 411 U.S. 792 (1973). Therefore, the court need not address whether a genuine dispute of material fact exists as to whether Robinson waived her discrimination claims.

b. <u>McDonnell Douglas</u> Analysis

DMV argues that, even if Robinson's claims of discrimination are not barred by the Stipulated Agreements, Robinson's claims fail under the <u>McDonnell Douglas</u> analysis. Under <u>McDonnell Douglas</u>, a plaintiff must initially establish a <u>prima facie</u> case of discrimination. The burden then shifts to the defendant to put forward a legitimate, nondiscriminatory reason for the adverse action. The plaintiff must then demonstrate that the nondiscriminatory reason proffered by the defendant is pretextual. <u>See</u> <u>Abrams v. Dep't of Pub. Safety</u>, 764 F.3d 244, 251 (2d Cir. 2014). DMV argues that summary judgment is appropriate because (1) Robinson failed to meet her initial burden of putting forward a <u>prima facie</u> case of discrimination, and (2) assuming, <u>arguendo</u>, that Robinson established a <u>prima facie</u> case of discrimination, she failed to demonstrate that a genuine dispute of material fact exists as to whether DMV's reasons for her suspensions were pretextual. <u>See</u> DMV Mem. in Supp. at 15, 23.

A plaintiff presents a prima facie case of discrimination by establishing that, (1) she belonged to a protected class; (2) she was qualified for the position she sought (or held); (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. <u>Abrams</u>, 764 F.3d at 251–52. DMV concedes that Robinson belonged to a protected class and was qualified for the position she held at DMV. <u>See</u> DMV Mem. in Supp. at 16. DMV also concedes that, if Robinson did not waive her claims as to her suspensions under the Stipulated Agreements, the suspensions were adverse employment actions. <u>See</u> <u>id.</u> However, DMV argues that Robinson failed to

provide any evidence to support a finding that the suspensions occurred under circumstances giving rise to an inference of discrimination based on race or color.  Id.

Robinson attempts to establish an inference of discrimination through evidence of disparate treatment.  "A showing of disparate treatment—that is, a showing that the employer treated plaintiff less favorably than a similarly situated employee outside his protected group—is a recognized method of raising an inference of discrimination for purposes of making out a prima facie case."  Mandell v. County of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003) (quotation and citation omitted).  A plaintiff relying on disparate treatment evidence "must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself."  Id.  An employee is similarly situated to co-employees if they were (1) "subject to the same performance evaluation and discipline standards" and (2) "engaged in comparable conduct." Ruiz v. Cty. of Rockland, 609 F.3d 486, 493–94 (2d Cir. 2010).  "[T]he standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical."  Id. at 494.  While the question as to whether employees are similarly situated is generally one of fact, a court may properly grant summary judgment "where no reasonable jury could find the similarly situated prong met."  See Dellaporte v. City Univ. of New York, 998 F. Supp. 2d 214, 230 (S.D.N.Y. 2014).

Robinson identified the following comparators in her deposition and in answers to interrogatories: (1) Anne Marie Amarena; (2) Janine Stevenson; (3) Linda Peters

(4) Lisa Parella; (5) Jonathan Roberts; (6) Melissa Raibeck; (7) Catherine Dell'Oro; and (8) Geraldine Russolessi.  DMV 56a(1) ¶ 85; Robinson 56a(2) ¶ 85.[6]

As to Robinson's 20-day suspension following the altercation with DMV customers, there is no genuine dispute of material fact as to whether the comparators were similarly situated to Robinson, because none were disciplined for engaging in comparable conduct.  Robinson was suspended following an altercation with members of the public.  She was overheard cursing at or in the presence of DMV customers, and allegedly threw documents at the customers.  The identified comparators were disciplined for the following conduct:  Amarena was suspended for two days following a verbal altercation with a coworker in the work area.  See Robinson Opp. (Doc. No. 69-2) at 46–51.  Stevenson was suspended for three days for the same verbal altercation. See DMV 56a(1) ¶ 87;  Robinson 56a(2) ¶ 87.  Peters was suspended for three days for making an offensive remark to a coworker; Parella was suspended for three days for threatening a coworker; Roberts was suspended for three days for violating the DMV Sexual Harassment Policy; Raibeck was suspended for ten days for misusing DMV computer systems; Dell'Oro was suspended for ten days for misusing state equipment. DMV 56a(1) ¶¶ 88–92; Robinson 56a(2) ¶¶ 88–92.  Russolessi was not suspended for her conduct in the verbal altercation with Robinson.  Robinson 56a(2) ¶ 49.

None of the comparators were alleged to have taken part in conduct involving the public; rather, they were all disciplined for conduct involving other DMV employees. While Robinson's burden to establish a prima facie case is not a heavy one, once DMV

---

[6] The court notes that Robinson objected to paragraph 85 of DMV's Statement of Facts.  See Robinson 56a(2) ¶ 85.  However, in objecting, she neither responded to the content of paragraph 85, nor cited to any admissible evidence.  The court deems paragraph 85 of DMV's statement of facts admitted.

provided evidence to support its claim that no genuine dispute of material fact existed as to whether she was similarly situated to the identified comparators, she bore the burden to provide evidence to rebut that claim and demonstrate the existence of a genuine issue for trial. See Weinstock, 224 F.3d at 41. Robinson provided no evidence to rebut DMV's arguments, or to show that any of the listed comparators engaged in the same or similar conduct as to that for which she was suspended. There is no genuine issue of material fact as to whether Robinson was disciplined more harshly than any similarly situated employee when she was suspended for 20 days, following allegations that she engaged in a dispute with a DMV customer. Robinson has therefore failed to put forward a prima facie case of discrimination as to her first suspension. The court grants DMV's Motion for Summary Judgment as to Robinson's claim of discrimination stemming from her first suspension.

As to Robinson's second suspension, Robinson was suspended for two days following a dispute with Russolessi; Russolessi was not disciplined. DMV 56a(1) ¶ 49; Robinson 56a(2) ¶ 49. DMV argues that Russolessi was not similarly situated because she was not under a Last Chance Agreement, and because an investigation "concluded that there was no basis to discipline Ms. Russolessi for her conduct." DMV Mem. in Supp. at 21. Robinson provided evidence that Manente concluded, after an investigation, that there was "sufficient evidence to find just cause" that Russolessi violated DMV policy, and that Russolessi "should receive appropriate discipline for her inappropriate and unprofessional behavior . . . ." Robinson 56a(2) ¶ 49; Request for Production 2, Ex. 1 (Doc. No. 72) at 28.

Construing the evidence in the light most favorable to Robinson, the court concludes that there is a material issue of fact as to DMV's investigation finding a sufficient basis to discipline Russolessi, and that, notwithstanding that finding, that Russolessi was not disciplined.  However, that does not conclude the court's inquiry as to whether Russolessi and Robinson were similarly situated.  The standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical.  Ruiz, 609 F.3d at 494.  However, courts have held that comparators were not similarly situated to plaintiffs where, as here, the plaintiffs' disciplinary histories were significantly more extensive than those of the comparators.

In Howell v. Montefiore Med. Ctr., the Second Circuit, in a Summary Order, affirmed a grant of summary judgment in favor of the defendant in a Title VII case.  See Howell v. Montefiore Med. Ctr., 675 F. App'x 74, 75 (2d Cir. 2017).  The plaintiff in Howell was terminated following an investigation by the defendant into an argument between the plaintiff and a coworker.  See id.  The plaintiff argued that the employer's proffered motivations were "pretextual, because the other employee involved in the . . . altercation was similarly situated to him but was not disciplined or terminated following the incident."  Id.  The Second Circuit rejected the plaintiff's argument, concluding that Howell and the comparator were not similarly situated because the Howell "had an extensive disciplinary history, including a prior termination later converted to a suspension, while the other employee had no disciplinary history."  Id.; see also Saji v. Nassau Univ. Med. Ctr., 724 F. App'x 11, 18 (2d Cir. 2018) (affirming grant of summary judgment in summary order where plaintiff put forward "no concrete

evidence" to show comparator had similar disciplinary history). Other Circuits have similarly held that employees with different disciplinary records are not similarly situated. See, e.g., Amrhein v. Health Care Serv. Corp., 546 F.3d 854, 860 (7th Cir. 2008); Parries v. Makino, Inc., 148 F. App'x 291, 299 (6th Cir. 2005); Jest v. Archbold Med. Ctr., Inc., 561 F. App'x 887, 889 (11th Cir. 2014).

DMV argues that, unlike Russolessi, Robinson was subject to a Last Chance Stipulated Agreement and had a record of prior discipline. See DMV Mem. in Supp. 21. Robinson argues that Callahan, whose Affidavit DMV provided as evidence that Russolessi did not have a prior disciplinary record, did not possess personal knowledge of Russolessi's disciplinary history. Robinson 56a(2) ¶ 51. However, as the court has noted, Callahan's Affidavit is admissible evidence. See supra at 5 n.4.

Robinson, as the nonmoving party, could not rely on unsubstantiated denials of DMV's properly supported arguments. Instead, she had to "offer some hard evidence" to rebut DMV's evidence that no genuine issue of material fact existed as to whether Russolessi's disciplinary history was sufficiently similar to Robinson's for the two to be similarly situated. See D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir.1998). Robinson pointed to no evidence to support an argument that Russolessi had a similar disciplinary history to hers, or that Russolessi had previously been disciplined in any way. The court concludes there is no genuine dispute of material fact as to whether Robinson and Russolessi were similarly situated, such that DMV's decision to suspend Robinson and not to discipline Russolessi created a circumstance raising the inference of discrimination.

As to the remaining comparators, DMV argued that (1) none of the comparators were subject to a Last Chance Stipulated Agreement; (2) comparators who engaged in similar conduct were not treated differently than Robinson; and (3) every comparator was subject to stipulated agreements similar to Robinson's.  See DMV Mem. in Supp. at 20–21.  The court addresses the second of DMV's arguments, that Robinson was not treated more harshly than the comparators.

As noted above, except for Russolessi, none of the comparators were suspended for less than two days.  See supra, at 17–18.  Amarena was suspended for two days; Stevenson, Peters, Parella, and Roberts were each suspended for three days. Raibeck and Dell'Oro were suspended for ten days.  Robinson has not provided any evidence to rebut DMV's evidence that the comparators were all suspended for the same or greater length of time as Robinson, or to support a finding that any comparators were disciplined less harshly than she was for the same or similar conduct.

The court concludes that there is no genuine dispute of material fact as to whether Robinson's second suspension occurred under circumstances raising an inference of discrimination.  Robinson failed to put forward a prima facia case of disparate treatment. The court therefore grants DMV's Motion for Summary Judgment as to Robinson's claim that her second suspension was discriminatory.

## V.    CONCLUSION

For the reasons stated above, Robinson's Motion to Strike (Doc. No. 70) is **DENIED**.  DMV's Motion for Summary Judgement (Doc. No. 64) is **GRANTED**.  The Clerk is ordered to close this case.

**SO ORDERED.**

Dated at New Haven, Connecticut this 20th day of December 2018.

/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge